COFFMAN TRUCK SALES, Plaintiff-Appellee, *v.* SACKLEY CARTAGE COMPANY, INC., Defendant-Appellant.

Second District   No. 76-307

Opinion filed February 15, 1978.—Rehearing denied April 7, 1978.

Peter Wilson, of Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora, for appellant.

John L. Petersen, of Aurora, for appellee.

Mr. JUSTICE WOODWARD delivered the opinion of the court:
Plaintiff, Coffman Truck Sales, drop-shipped two of its trucks for the purpose of resale to another dealer, Interstate GMC, Inc. Interstate sold

and delivered possession of the trucks to defendant, Sackley Cartage Company. Sackley had dealt with Interstate's salesman when he previously worked for another dealership; the salesman took the papers necessary to provide documentation of title and told Sackley that he would "handle everything"; Sackley later requested delivery of the title documents, although the complete set of title papers, including the certificate of origin, was never delivered to Sackley. Interstate went out of business, having never paid Coffman for the two trucks in question, and Coffman brought this action to replevy the trucks from Sackley. Sackley asserted, as an affirmative defense, that it had purchased the trucks, and counterclaimed for actual and punitive damages based on the allegedly wrongful repossession of the trucks by Coffman and on Sackley's need to lease other equipment to replace the replevied trucks. The trial court found that Sackley had not purchased the trucks in the ordinary course of business, and held for Coffman on its complaint and against Sackley on its counterclaim. Sackley appeals.

In our view, this cause turns on the question of whether Sackley purchased the trucks in the ordinary course of business. We believe that *Humphrey Cadillac & Oldsmobile Co. v. Sinard* (1967), 85 Ill. App. 2d 64, 229 N.E.2d 365, is dispositive. In that case a large automobile dealership sold two cars to another dealer, who in turn sold them to individuals. One purchaser had dealt previously with his immediate seller, while the other had not. Neither purchaser was given a certificate of title, although each made requests for the document. In response to his urging, one purchaser eventually did receive his title, but it showed the address of the initial seller. The trial court allowed the initial seller to replevy the cars. On appeal, the First District reviewed sections 2—403 and 1—201(9) of the Uniform Commercial Code (Ill. Rev. Stat. 1965, ch. 26, pars. 2—403, 1—201(9)) which deal respectively with the doctrine of entrustment and the definition of, "buyer in the ordinary course of business." That court, after considering the intent and purpose of the statutes and the facts of the case, held that the spirit and the letter of the law required a reversal of the judgment granting replevin to the initial dealer.

Under similar facts, and with the appropriate statutes still in the same form, we hold, as did the court in *Humphrey*, that it was error to allow replevin against such a purchaser as is present here. We note particularly that it was plaintiff which placed the trucks into the stream of commerce, well aware that Interstate intended to sell them, and that plaintiff nonetheless waited 2½ months before even attempting to collect payment from Interstate. It is our view that the consumer should not be the one to bear the loss under such circumstances, even when that consumer is a commercial corporation.

We accordingly reverse the judgment of the trial court on the complaint for replevin and on the counterclaim and remand this cause with directions that judgment be entered for the defendant and against the plaintiff on the complaint for replevin, and further that the court conduct additional hearings on the defendant's counterclaim for damages and enter such judgment thereon as it deems appropriate. ·

Reversed and remanded with directions.

SEIDENFELD, P. J., and NASH, J., concur.