SPRINGFIELD FIRE AND CASUALTY COMPANY, Plaintiff-Appellant, v. SCOTT S. GARNER, d/b/a State Street Auto Sales, *et al.*, Defendants-Appellees.

Fourth District   No. 4—93—0292

Argued September 20, 1993.—Opinion filed December 30, 1993.

W. Scott Hanken (argued), of Long, Morris, Myers & Rabin, P.C., of Springfield, for appellant.

Donald R. Schuering, of Goehl, Schuering & Cassens, of Quincy, for appellee Adam Johnson.

Jonathan H. Barnard (argued), of Schmiedeskamp, Robertson, Neu & Mitchell, of Quincy, for appellees April I. Sullivan and Angie C. Sullivan.

Barney S. Bier, of Bier & Welborn, of Quincy, for appellee Melissa Kindhart.

Jerry L. Timmerwilke, of Lewis, Blickhan, Longlett & Timmerwilke, of Quincy, for appellee Kevin L. Schoenekase.

Eric M. Rhein, of Eric M. Rhein, P.C., of Belleville, for appellee Scott S. Garner.

JUSTICE STEIGMANN delivered the opinion of the court:
This case arises from a one-car accident in which Adam Johnson drove an automobile registered to Scott S. Garner, d/b/a State Street Auto Sales (a used car dealership). Plaintiff, Springfield Fire and Casualty Company, and defendants, Scott Garner, Adam Johnson, and persons claiming to have been injured in the accident, brought cross-declaratory-judgment actions asking the trial court to interpret Garner's used car dealer's garage insurance policy. Defendants sought a determination that Johnson was a "customer" and therefore an insured under Garner's policy. Plaintiff asked the court to find that Johnson was the "owner" of the vehicle involved in the accident; but if the court determined Johnson was covered, that the policy liability limits should be declared as $20,000 per person or $40,000 per occurrence, the limits required under section 7—203 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1989, ch. 95½, par. 7—203). After a bench trial in January 1993, the trial court found that (1) Garner was the owner of the vehicle and Johnson was an insured under the policy; and (2) the limits of liability were $100,000 per person or $300,000 per occurrence as set forth in section 5—102(b)(4) of the Code (Ill. Rev. Stat. 1989, ch. 95½, par. 5—102(b)(4)). This appeal followed. Plaintiff challenges both the trial court's determination on ownership and its assessment of the liability limits of the policy.
We affirm the finding of ownership and reverse the determination of the liability limits of the policy.

### I. Background
On October 13, 1989, plaintiff insurer issued the policy in question to Garner insuring his used car business. In the policy, Garner specified liability coverage for 32 autos in the amount of $100,000/$300,000/$50,000 and uninsured motorist's coverage on 26 autos in the amount of $20,000/$40,000 for bodily injury liability. On September 29, 1990, Johnson, the half-brother of Garner's wife, was operat-

ing a 1977 Chevrolet Impala automobile—titled in Garner's business and bearing Garner's dealership plates—when it was involved in a one-car accident in Adams County, Illinois. At the time of the accident, Johnson was not insured by any policy for operating a motor vehicle. Defendants April Sullivan, Angie Sullivan, Melissa Kindhart, and Kevin Schoenekase were passengers in the vehicle and all claimed to have been injured as a result of the accident.

In August 1991, plaintiff filed a complaint for interpleader, and defendants answered and counterclaimed for declaratory judgment. In January 1992 plaintiff moved to withdraw its complaint for interpleader, which the court granted. At the same time, plaintiff filed a complaint for declaratory judgment, seeking a determination that Johnson, the driver of the 1977 Impala, was the owner of the vehicle and not an insured under its policy with Garner.

At issue is the following policy provision:

"PART IV—LIABILITY INSURANCE
* * *

D. WHO IS AN 'INSURED.'
    1. For covered 'Autos.'
* * *

        b. Anyone else is an 'insured' while using with your permission a covered 'auto' except:
* * *

            (3) Your customers, if your business is shown in the declarations as an 'auto' dealership. However, if a customer of yours:

            (a) Has no other available insurance (whether primary, excess or contingent), he or she is an 'insured' *but only up to the compulsory or financial responsibility law limits* where the covered 'auto' is principally garaged.

            (b) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered 'auto' is principally garaged, he or she is an 'insured' only for the amount by which the compulsory or financial responsibility law limits exceed the limits of his or her other insurance." (Emphasis added.)

II. OWNERSHIP OF THE 1977 IMPALA

■ As a general rule, the standard of review when considering a trial court's granting a declaratory judgment is whether the trial court abused its discretion. (*Farmers Oil & Supply Co. v. Illinois*

*Central R.R. Co.* (1972), 6 Ill. App. 3d 965, 286 N.E.2d 68.) However, when this court considers a trial court's determination of the ownership of an automobile for insurance purposes, the standard of review is whether the trial court's decision is against the manifest weight of the evidence. *Country Mutual Insurance Co. v. Aetna Life & Casualty Insurance Co.* (1979), 69 Ill. App. 3d 764, 387 N.E.2d 1037.

In a replevin action, this court stated the following concerning the trial court's determination of ownership:

> "The major issue in this action was the ownership of the vehicles. It is well established that the determination of ownership *** is a question of fact for the trial court to determine. [Citations.] Since the trial court is in a superior position to assess the credibility of the parties and weigh the evidence in this respect, its decision must stand unless it is contrary to the manifest weight of the evidence." *(Dan Pilson Auto Center, Inc. v. DeMarco* (1987), 156 Ill. App. 3d 617, 620, 509 N.E.2d 159, 161.)

A decision is against the manifest weight of the evidence if, after a review of the evidence, it is clearly evident that the conclusion opposite to the one reached by the trial court was the proper disposition. *In re Estate of Ozier* (1992), 225 Ill. App. 3d 33, 38, 587 N.E.2d 77, 81.

■ To determine whether ownership of a vehicle has passed, we must look to the intentions of the parties. *(Dan Pilson Auto Center,* 156 Ill. App. 3d at 620-21, 509 N.E.2d at 161; see also *Finnan v. Johnson* (1983), 111 Ill. App. 3d 479, 444 N.E.2d 290; *Country Mutual,* 69 Ill. App. 3d 764, 387 N.E.2d 1037.) Their intention controls even if they have not fully complied with the provisions of the Code pertaining to the transfer of ownership of a vehicle. Furthermore, a person can own a motor vehicle for insurance purposes even when title is in someone else's name. *Country Mutual,* 69 Ill. App. 3d at 768, 387 N.E.2d at 1040, citing *State Farm Mutual Automobile Insurance Co. v. Lucas* (1977), 50 Ill. App. 3d 894, 898, 365 N.E.2d 1329, 1332.

Garner was the only party to the transaction who testified. The trial court, after hearing Garner's testimony, found that although an agreement to purchase the vehicle existed, Garner still owned the vehicle at the time of the accident. The court found that ownership was to pass upon Johnson's making a payment to Garner. The court based its decision on testimony that no written agreement existed, no financing or payment had been arranged or consummated, and no bill of sale or documentation of the transfer of title existed.

Garner's testimony regarding this transaction contained some inconsistencies. When asked why Johnson had the car, Garner replied that Johnson was test driving it. Garner also testified that on the evening of the accident, he and Johnson agreed on a price of $1,000 for the vehicle, and that Garner would accept $700 on the following Monday with the balance due at a later date. After agreeing on the price, Garner said he and Johnson shook hands, and he considered the matter a "done deal." Garner further explained that he then viewed the car as "in fact sold to [Johnson]." Later in his testimony, however, Garner testified that he considered a deal closed only when he received the money, and that if a prospective purchaser did not have insurance or financing, and if the exchange of money did not take place, then no sale had occurred. When asked why he took the car after the accident and did not attempt to collect any money from Johnson, he stated, "The car was wrecked. Nothing ever, no documents ever changed place. It was still my car."

■ The trial court had a superior opportunity to observe and weigh Garner's contradictory testimony, and we will not reverse its judgment unless a contrary outcome is clearly evident. (*Dan Pilson Auto Center*, 156 Ill. App. 3d at 620, 509 N.E.2d at 161.) The evidence in this record fails to show that the trial court's determination that Garner owned the 1977 Impala at the time of the accident was clearly against the manifest weight of the evidence. Accordingly, we affirm the trial court's determination that Garner owned the vehicle at the time of the accident.

### III. Policy Limits

#### A. *The Policy*

This appeal presents a dispute over the meaning of the above-quoted policy term, "but only up to the compulsory or financial responsibility law limits where the covered 'auto' is principally garaged."

#### B. *The Statutory Scheme*

Plaintiff contends that this provision of the policy refers to the compulsory or financial responsibility limits contained in sections 7—601 and 7—203 of the Code. Section 7—601(a) states the following:

"Required liability insurance policy. (a) From January 1, 1990[,] through December 31, 1993, no person shall operate, register or maintain registration of, and no owner shall permit another person to operate, register or maintain registration of,

a motor vehicle designed to be used on a public highway unless the motor vehicle is covered by a liability insurance policy.

The insurance policy shall be issued in amounts no less than the minimum amounts set for bodily injury or death and for destruction of property under Section 7—203 of this Code, and shall be issued in accordance with the requirements of Sections 143a and 143a—2 of the Illinois Insurance Code, as amended. No insurer other than an insurer authorized to do business in this State shall issue a policy pursuant to this Section for any vehicle subject to registration under this Code." (Ill. Rev. Stat. 1989, ch. 95½, par. 7—601(a).)

Section 7—203 of the Code provides:

"Requirements as to policy or bond. *** However, every such policy or bond is subject, if the motor vehicle accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than $20,000 because of bodily injury to or death of any one person in any one motor vehicle accident and, subject to said limit for one person, to a limit of not less than $40,000 because of bodily injury to or death of 2 or more persons in any one motor vehicle accident, and, if the motor vehicle accident has resulted in injury to or destruction of property, to a limit of not less than $15,000 because of injury to or destruction of property of others in any one motor vehicle accident." (Ill. Rev. Stat. 1989, ch. 95½, par. 7—203.)

By its terms, section 7—601 required mandatory minimum liability coverage of $20,000/$40,000/$15,000 for all drivers and vehicles effective January 1, 1990 (after the effective date of the policy at issue). This language, however, was added to the Code in 1988 (Pub. Act 85—1201, eff. July 1, 1989 (1988 Ill. Laws 1563, 1567-68)), before the issuance of this policy.

Defendants contend that the compulsory insurance referred to in the policy provision is that required under section 5—102(b)(4) of the Code, which states the following:

"Used vehicle dealers must be licensed. ***

(b) An application for a used vehicle dealer's license shall be filed with the Secretary of State, duly verified by oath, in such form as the Secretary of State may by rule or regulation prescribe and shall contain:

* * *

4. A statement that the applicant has complied with the appropriate liability insurance requirement. A Certificate of Insurance in a solvent company authorized to do business in the

State of Illinois shall be included with each application covering each location at which he proposes to act as a used vehicle dealer. The policy must provide liability coverage in the minimum amounts of $100,000 for bodily injury to, or death of, any person, $300,000 for bodily injury to, or death of, two or more persons in any one accident, and $50,000 for damage to property. Such policy shall expire not sooner than December 31 of the year for which the license was issued or renewed. The expiration of the insurance policy shall not terminate the liability under the policy arising during the period for which the policy was filed. Trailer and mobile home dealers are exempt from this requirement." Ill. Rev. Stat. 1989, ch. 95½, par. 5—102(b)(4).

The trial court found that the policy language referred to the limits contained in section 5—102(b)(4) of the Code. The court further found that the policy, by its own language, provided coverage up to those limits.

### C. *Compulsory versus Financial Responsibility Laws Generally*

The legislature intended financial responsibility laws to secure the solvency of those operating vehicles on public highways. Generally, these laws provide that the license of a person shall be revoked upon any unpaid judgment rendered against the driver arising out of a motor vehicle accident. The driver's license can only be reinstated upon a showing of financial responsibility for the future. A driver can show this by posting a bond of sufficient size or purchasing liability insurance with sufficient limits. (See 6B J. Appleman & J. Appleman, Insurance Law and Practice §4295, at 238-61 (1979).) Section 7—203 of the Code, for example, required insurance policies with limits of $20,000/$40,000 sufficient to show financial responsibility. These laws are intended to furnish compensation for innocent victims and the general public who become injured through the negligent operation of motor vehicles, not to protect the insured tortfeasor from his own negligence. 12A G. Couch, Cyclopedia of Insurance Law §45:723, at 365-67 (2d ed. rev. M. Rhodes 1981).

Compulsory auto liability insurance laws generally make unlawful the registration or operation of an automobile without auto liability insurance or some other indicia of financial responsibility. Typically, such laws require proof of a satisfactory liability policy as a condition precedent to the issuance of valid auto license plates. See 6B J. Appleman & J. Appleman, Insurance Law and Practice §4299, at 300-06 (1979).

Thus, financial responsibility laws can be distinguished from compulsory auto liability laws in that financial responsibility laws generally require proof of financial responsibility, such as an insurance policy, only after a driver has been in an accident or has been found to be a habitual offender. On the other hand, compulsory insurance laws require insurance for all vehicles operated on public highways. 12A G. Couch, Cyclopedia of Insurance Law §45:679, at 315 (2d ed. rev. M. Rhodes 1981); 6B J. Appleman & J. Appleman, Insurance Law and Practice §4299, at 301-02 (1979).

Before the policy at issue was entered into, Illinois was only a financial responsibility law State. The Code required insurance only after a driver was involved in an accident. (See Ill. Rev. Stat. 1989, ch. 95½, par. 7—100 *et seq.*) In 1988, the General Assembly added section 7—601 to the Code, making Illinois a compulsory auto insurance State (Pub. Act 85—1201, eff. July 1, 1989 (1988 Ill. Laws 1563, 1567-68)). This provision, however, did not require insurance until January 1, 1990, after the policy here was entered into and during its term. The compulsory auto liability law, section 7—601, did not require such insurance as of October 1989 when this policy was entered into, but did require such coverage at the time of this accident.

### D. *Analysis*

Plaintiff argues that section 5—102 of the Code did not require a dealer to insure his customers. Plaintiff bases this argument on the fact that this section only provides that an *applicant* for a license must show he has liability insurance up to those limits. Thus, plaintiff claims that the Code does not require that this insurance extend to customers who are test driving used vehicles.

Defendants contend that the public policy behind section 5—102 was to protect the public from uninsured drivers test driving used vehicles. Defendants point out that the section of the Code requiring insurance exempts trailer and mobile home dealers. Defendants then argue that this demonstrates the legislative concern about used car dealers who customarily let motorists, some of whom may be uninsured, test drive their vehicles. Defendants urge us to extend this section of the Code to require coverage, up to the stated limit, for customers of all used car dealers.

Plaintiff argues that *Landis v. New Amsterdam Casualty Co.* (1952), 347 Ill. App. 560, 107 N.E.2d 187, controls this issue. Plaintiff suggests that the court in *Landis* found that the appropriate limits of a similar policy provision were the financial responsibility

law limits. However, the policy in *Landis* made reference only to the " 'motor vehicle financial responsibility law of [the] State.' " (*Landis*, 347 Ill. App. at 564, 107 N.E.2d at 190.) Without question, this language in *Landis* applied to the financial responsibility law; no other law was mentioned. In the present case, the language in the policy at issue refers to the "compulsory *or* financial responsibility law limits." (Emphasis added.) Given our current statutory scheme and that which existed at the time the policy in question was entered into, we find *Landis* neither controlling nor of much guidance.

In response to plaintiff's arguments, defendants point out that an insurance contract is presumed to be entered into in light of the existing law. (*Country Mutual Insurance Co. v. Wagner's Bulldozing* (1989), 179 Ill. App. 3d 710, 714, 534 N.E.2d 1040, 1043.) At the time this insurance contract was entered into, section 5—102(b)(4) of the Code required used car dealerships to carry insurance with liability limits of $100,000/$300,000; section 7—601, the mandatory insurance provision of the Code, did not require insurance until January 1, 1990, after the policy was entered into, but during its term. Defendants contend that when the policy referred to compulsory or financial responsibility limits it could only be referring to section 5—102(b)(4) of the Code, because this was the only law that required liability insurance.

This argument fails to take into account that prior to the execution of this policy, the Illinois Safety Responsibility Law, section 7—203 of the Code, was in effect and required limits of $20,000/$40,000. Furthermore, the compulsory insurance law already was in effect as of July 1, 1989; it simply did not require such insurance coverage until January 1, 1990. Therefore, when the policy referred to compulsory or financial responsibility law limits, the insurer may have intended the limits required under the Illinois Safety Responsibility Law to apply.

Defendants also take the position that the provision is ambiguous. An insurance policy provision is ambiguous if it is subject to more than one reasonable interpretation. When a policy provision is ambiguous, all doubt must be resolved in favor of the insured. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64, 74, 578 N.E.2d 926, 930.

The policy provision in dispute states that the limits of liability when a customer is uninsured are the compulsory or financial responsibility law limits of this State. The defendants argue that at least two reasonable interpretations of this provision exist. At the

time this policy was entered into, there were both compulsory and financial responsibility insurance laws, but the compulsory insurance was not statutorily required until January 1, 1990. Because two possible interpretations exist, defendants argue that the one most favorable to the insured must be used.

The resolution of this issue turns on the interpretation of the policy language. The responsibility of a court in interpreting an insurance policy is to ascertain and enforce the intention of the parties as expressed in the agreement. (*de los Reyes v. Travelers Insurance Cos.* (1990), 135 Ill. 2d 353, 358, 553 N.E.2d 301, 304.) Further, the paramount issue when construing an insurance policy is to ascertain the intention of the parties at the time the contract is entered into, not at the time of the accident. (See 2 G. Couch, Cyclopedia of Insurance Law §15:9, at 136-45 (2d ed. rev. M. Rhodes 1984); see also 13 J. Appleman & J. Appleman, Insurance Law and Practice §7385, at 113 (rev. 1976).) We further note that the private intent of the parties does not control; instead, their intent, as expressed in the agreement, controls. *Guaranty National Insurance Co. v. Koch* (1993), 242 Ill. App. 3d 692, 696-97, 611 N.E.2d 91, 94.

In interpreting policy language, however, "[a] court must strive to give each term in the policy meaning unless to do so would render the clause or policy inconsistent or inherently contradictory." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 123, 607 N.E.2d 1204, 1219.

■ In the present case, the insurance policy provides coverage to Garner's customers if they have no insurance or the customer's insurance is less than the compulsory or financial responsibility law limits of the State. This coverage, however, is limited to the compulsory or financial responsibility law limits. It is defendants' position that this provision grants coverage in the amount of $100,000/$300,000 when a customer does not have any insurance. These are the same liability limits afforded Garner, the name insured. This interpretation would give no meaning and make surplusage the "only up to the compulsory or financial responsibility law limits" language found in the policy. This is contrary to Illinois rules of construction. *Outboard Marine*, 154 Ill. 2d at 123, 607 N.E.2d at 1219.

Not only would this interpretation fail to give meaning to certain language in the contract, it would also lead to unreasonable and possibly absurd results. "The [policy] should not be given a strained, forced, unnatural, or unreasonable construction, or a con-

struction which would \*\*\* lead to an absurd conclusion \*\*\*." 45 C.J.S. Insurance §366, at 89 (1993).

Adopting defendants' position would lead to one of two possible conclusions. The first possibility is that there would be coverage for every customer, unless the customer carried insurance with policy limits of $100,000/$300,000. This would give no effect to the policy provisions excluding customers from the policy. This would be contrary to the intentions of the parties as well as well-established rules of construction.

The other possible conclusion is that coverage is only afforded a customer if he or she has no insurance, or his or her insurance is below the $20,000/$40,000 limits provided by section 7—203 of the Code. This is clearly what the parties intended. The defendants' position, however, would be that once coverage is established, the limits are $100,000/$300,000. This would lead to the absurd result of a customer with the required $20,000/$40,000 coverage receiving no protection from the policy, while a customer with no insurance or insurance below the required limits would receive coverage up to $100,000/$300,000. This would be an unreasonable interpretation of the policy, and we will not interpret the policy in such a manner.

Therefore, we hold that the policy limits provided by Part IV(D)(1)(b)(3)(a) of the policy are those set forth in section 7—203 of the Code, namely $20,000 per person and $40,000 per occurrence.

IV. Conclusion

For the reasons stated, we affirm the trial court's determination that Garner was the owner of the 1977 Chevrolet Impala, and reverse its finding that the policy provision in question provides liability limits of $100,000/$300,000 for this occurrence.

Affirmed in part; reversed in part.

LUND and GREEN, JJ., concur.