ITT COMMERCIAL FINANCE CORP., a Nevada corporation, Plaintiff,

v.

UNLIMITED AUTOMOTIVE, INC., d/b/a Fox Valley R.V., an Illinois corporation, Bank One Milwaukee, N.A., a federally chartered banking association, and Richard Messenger, Defendants.

CHRYSLER FIRST COMMERCIAL CORPORATION, a Pennsylvania corporation, Intervenor,

v.

UNLIMITED AUTOMOTIVE, INC., d/b/a Fox Valley R.V., an Illinois corporation, and Everett J. Hiller, Defendants.

No. 92 C 1059.

United States District Court, N.D. Illinois, Eastern Division.

April 1, 1994.

Daniel John Voelker, Peter C. Woodford, James L. Curtis, Christopher V. Langone, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for ITT Commercial Finance Corp.

Douglas Allan Lindsay, Blake T. Lynch, Michele K. Parthum, Lewis, Overbeck & Furman, Chicago, IL, for Bank One.

*MEMORANDUM OPINION
AND ORDER*

GOTTSCHALL, United States Magistrate Judge.

This matter is before the court on the parties' cross-motions for summary judgment. For the reasons set forth below, plaintiff's motion is granted and defendants' motion is denied.

## BACKGROUND

The subject of this dispute is a 1986 Airstream motor home. On August 10, 1989, Edward Darby ("Darby") purchased the vehicle (hereafter, "the vehicle" or "the Darby vehicle") from Unlimited Automotive, Inc., d/b/a Fox Valley R.V. ("Unlimited"). Defendant herein, Bank One, Milwaukee, N.A., acquired an interest in the vehicle on that date, when Unlimited assigned to it the retail installment contract with Darby. Defendant concedes that its security interest in the vehicle was not perfected by notation of its lien on the certificate of title.[1]

Plaintiff claims a security interest dating from sometime around July 19, 1991, when Darby returned the vehicle to Unlimited's premises. In a letter of July 19, 1991, defendant's assistant manager of collections gave Unlimited the following instructions:

This is a written authorization to sell the below collateral:

ONE—1986 Airstream Motorhome 345LE

I.D. IGBKP37W6F3345951

for Bank One, Milwaukee. Fox Valley has the authorization to list the collateral for 90 days. The current balance on the motor home is $57,111.56. If there are any questions please contact Joe Houk at 414–765–2423.

As discussed later in connection with plaintiff's motion for summary judgment, the parties dispute whether this letter created a consignment or "sale or return" within the meaning of § 2–326 of the Illinois Uniform Commercial Code ("UCC"). If so, the vehicle while at Unlimited's place of business might be subject to the claims of Unlimited's creditors, including plaintiff.

Plaintiff was one of Unlimited's secured creditors, providing financing for the purchase of some of its inventory by means of floor planning. Under the agreement for wholesale financing, Unlimited gave plaintiff a security interest in all of its inventory and in other collateral, including after-acquired property. On December 17, 1991, plaintiff and Unlimited entered into an amended written wholesale financing agreement.[2] Under the terms of that agreement, plaintiff had a right to take immediate possession of its secured collateral in the event of a default by Unlimited. It is undisputed that plaintiff filed an amended financing statement with the Secretary of the State of Illinois for the purpose of perfecting its security interest in its collateral.

Shortly after December 17, 1991, Unlimited was in default of its obligations under the agreement with plaintiff. On February 11, 1992, the date this lawsuit was instituted, the Darby vehicle was still in Unlimited's possession. After one of Unlimited's principals executed a February 25, 1991 agreement voluntarily surrendering the remainder of Unlimit-

---

1. The complication in the main text is not the only problem with title to the Darby vehicle. Prior to the sale to Darby, Unlimited had apparently acquired the vehicle from a Mr. and Mrs. Miser ("the Misers"). There is some dispute as to whether Unlimited ever received title to the vehicle from the Misers. *See* Final Pretrial Order, Agreed Statement of Contested Facts, ¶ 28. After the commencement of this lawsuit, in or around May 1992, the Misers signed a duplicate title to the vehicle over to defendant. *Id.,* ¶¶ 29–30. Thus, records of the Secretary of the State of Wisconsin would as of May 1992 list defendant as owner of the vehicle. *Id.,* ¶ 31. The Secretary of the State of Illinois also issued a title to the vehicle in May 1992. Undisputed Facts, ¶ 26.

2. As discussed in connection with defendant's motion for summary judgment, because the amended agreement was entered into after Unlimited's dissolution, defendant contends that the agreement lacked legal effect. Although defendant also objects that Unlimited could not acquire "inventory" after its dissolution, this memorandum will refer to Unlimited as possessing inventory and other property in order to simplify the discussion here. The reference is not intended as a finding that Unlimited had a continuing corporate existence.

ed's inventory and other collateral, plaintiff took possession of all vehicles, including the Darby vehicle. On February 28, 1991, defendant's representative removed the vehicle from Unlimited's premises.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

■ Defendant moves for summary judgment, relying on the fact that Unlimited was involuntarily dissolved by the Illinois Secretary of State on March 1, 1991. Thus, when the Darby vehicle was brought to Unlimited in or around July 1991, the corporation would have lacked authority to carry on its normal business. 805 ILCS 5/12.30. Similarly, on December 17, 1991, the date plaintiff and Unlimited entered into the amended wholesale financing agreement relied on in the complaint, Unlimited would have lacked authority to do so. Plaintiff argues that its interest really stems from an earlier security agreement executed before the involuntary dissolution, but it would have been beyond Unlimited's powers to continue to acquire inventory under an earlier agreement as well. Defendant notes authority that where corporate principals continue to carry on the business of a corporation after its involuntary dissolution, they may be held personally liable for debts of the corporation. *See* 805 ILCS 5/8.65(a)(3); *Chicago Title & Trust Co. v. Brooklyn Bagel Boys, Inc.,* 222 Ill.App.3d 413, 164 Ill.Dec. 930, 584 N.E.2d 142 (1st Dist.1991), *appeal denied,* 144 Ill.2d 632, 169 Ill.Dec. 140, 591 N.E.2d 20 (1992); *Richmond Wholesale Meat Co. v. Hughes,* 625 F.Supp. 584 (N.D.Ill.1985). *See also Anderson v. Hillsborough Sheet Metal, Inc.,* 513 So.2d 1359 (Fla.Dist.Ct.App.1987); *McLean Bank v. Nelson,* 232 Va. 420, 350 S.E.2d 651 (1986); *Adams v. Mt. Pleasant Bank & Trust Co.,* 355 N.W.2d 868 (Iowa 1984); *K & J Markets, Inc. v. Martin Packing Corp.,* 18 N.J.Super. 124, 86 A.2d 715, *aff'd,* 20 N.J.Super. 515, 90 A.2d 507 (1952).

Noting the above principles of corporate law, defendant argues that after March 1, 1991, the security agreement between plaintiff and Unlimited was a nullity. Hence, after that date, and at the time Darby returned the vehicle, plaintiff would have no security interest in Unlimited's inventory. Since defendant acquired its security interest on August 10, 1989, it argues that its interest was necessarily prior to plaintiff's.

Defendant cites no authority, however, to the effect that the involuntary dissolution of a corporation deprives secured creditors of their security interests in corporate assets. Such a rule would no doubt impose considerable burdens on secured creditors, since they would have to continually check on the status of corporate debtors with which they do business in order to protect their security interests. At the same time, the Illinois statutory framework arguably makes allowance for the fact that in many instances, dissolved corporations continue to do business despite involuntary dissolution. Thus, § 12.45 of the Business Corporations Act provides that, upon taking prescribed steps, a corporation may be reinstated within five years of dissolution. "Upon the issuance of the certificate of reinstatement, the corporate existence shall be deemed to have continued without interruption from the date of the issuance of the certificate of dissolution, and the corporation shall stand revived with such powers, duties and obligations as if it had not been dissolved; and all acts and proceedings of its officers, directors, and shareholders, acting or purporting to act as such, which would have been legal and valid but for such dissolution, shall stand ratified and confirmed." 805 ILCS 5/12.45(d); *Regal Package Liquor, Inc. v. J.R.D., Inc.,* 125 Ill.App.3d 689, 80 Ill.Dec. 957, 466 N.E.2d 409 (5th Dist.1984).

■ Defendant has presented no evidence that plaintiff knew of Unlimited's dissolution. Based on the above authorities, this court cannot agree with defendant that Unlimited's dissolution invalidated plaintiff's security interest in Unlimited's inventory. There remains, though, the question of whether that interest remained a perfected interest. If plaintiff failed to take some action needed to insure that its security interest remained perfected, then defendant's unperfected security interest in the Darby vehicle might have priority over plaintiff's interest. As defendant sees it, the involuntary dissolution of Unlimited constituted such an event because at that point, Unlimited's principals become

personally liable for the actions and debts of the business. Thus, they become the "debtors" under plaintiff's wholesale financing agreement. Although there is no evidence of an official change in the business name, defendant contends that Unlimited become a "trade name" used by Unlimited's principals in their individual capacities. As set forth below, defendant argues that after the involuntary dissolution, the existing financing statement no longer properly identified the debtor under the wholesale financing agreement.

Under the Illinois Uniform Commercial Code, a financing statement is sufficient to perfect a security interest in collateral if it provides the information prescribed in § 9–402, which information includes "the name of the debtor." 810 ILCS 5/9–402(1). The following provision relates to the use of trade names or changes in the name of the debtor:

A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or names of partners. Where the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than 4 months after the change, unless a new appropriate financing statement is filed before the expiration of that time. . . .

810 ILCS 5/9–402(7).

A financing statement substantially complying with the requirements of this Section is effective even though it contains minor errors which are not seriously misleading.

810 ILCS 5/9–402(8). Applying § 7–402, courts have found that a filing in a debtor's trade name alone is insufficient to perfect a security interest unless the trade name is substantially similar or sufficiently related to the actual name of the debtor so as to give notice of a possible prior security interest to anyone searching the records. *In re Swati, Inc.*, 54 B.R. 498, 501–502 (Bankr.N.D.Ill. 1985). *See also Pearson v. Salina Coffee House, Inc.*, 831 F.2d 1531 (10th Cir.1987); *In re Leichter*, 471 F.2d 785 (2d Cir.1972).

Also, where a corporate debtor under a security agreement voluntarily dissolves, but continues its business as a new and different entity, it has been held that a new financing statement is required in order that the secured creditor's interest remain perfected. *Matter of Kitchen Trend of Homewood, Inc.*, 55 B.R. 553 (N.D.Ala.1985). The critical inquiry is whether a reasonably prudent subsequent creditor would have discovered the prior security interest. *Id.* at 555.

The rigid requirement that a debtor's legal name be used on the financing statement furthers the objectives of the UCC filing system for secured transactions. The purpose behind the filing provisions is to provide notice to subsequent creditors in a manner which will give such creditors confidence that they are aware of any prior security interests in the collateral that may be superior to their own interest. Clarity and certainty in lien perfection requirements are lost if equitable exceptions are created which permit trade name filings to replace filings in the legal name when the "equities" so dictate.

\*　\*　\*　\*　\*　\*

If a creditor sues a debtor to recover its collateral, it is expected to sue in the debtor's legal name. It is not a serious burden to require the creditor to ascertain the legal name of the debtor at the time it files a financing statement as well. If a creditor inquires of a debtor as to its legal name and is intentionally misled, a different result might be appropriate.

*Pearson*, 831 F.2d at 1536.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Essex Ins. Co. v. Stage 2, Inc.*, 14 F.3d 1178, 1180–1181 (7th Cir.1994). However, the presence of some alleged factual dispute will not defeat an otherwise properly supported motion if the dispute does not concern

a material fact. *Ryan v. Wersi Electronics GmbH and Co.*, 3 F.3d 174, 179 (7th Cir. 1993); *Biddle v. Martin*, 992 F.2d 673, 675 (7th Cir.1993). "The purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Biddle, id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

On the facts before it, this court cannot agree that plaintiff lost its status as a perfected secured creditor after Unlimited's involuntary dissolution. Defendant has presented no evidence that the name of the business was changed or that creditors were aware of the fact of the dissolution. In a hypertechnical sense, the corporate name became a "trade name" as there was no active corporate entity to which it could attach, but a creditor searching the records would have looked for the name "Unlimited." *See National Bank of Fulton County v. Haupricht Bros., Inc.*, 55 Ohio App.3d 249, 564 N.E.2d 101, 112–113 n. 2 (1988). Because, on the facts before it, this court concludes that plaintiff's financing statement was not seriously misleading, defendant's motion for summary judgment is denied.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for summary judgment, arguing that because Unlimited held the Darby vehicle on consignment, it was subject to the claims of Unlimited's creditors, including plaintiff, while in Unlimited's possession. The question here being one of priority of claims, rather than whether claims are perfected, it is governed by the UCC, rather than the Illinois Vehicle Code, 625 ILCS 5/1–101 *et seq.* ("IVC"). *See United States v. Rotherham*, 836 F.2d 359, 364–365 (7th Cir.1988); *Finance America Commercial Corp. v. Econo Coach, Inc.*, 95 Ill.App.3d 185, 50 Ill.Dec. 667, 672, 419 N.E.2d 935, 940 (2d Dist.1981). As this court reads the cases, the fact that a consignor owns and holds legal title to a vehicle will not prevent qualifying secured creditors of its consignee from subjecting a vehicle to their claims if the consignor has not complied with UCC requirements concerning notice of the consignment. *See Martin v. First Nat'l Bank of Joliet*, 127 Ill.App.3d 485, 82 Ill.Dec. 348, 468 N.E.2d 1002 (3d Dist.1984); *In re Tristar Automotive Group, Inc.*, 141 B.R. 41 (Bankr. S.D.N.Y.1992).

Relevant provisions of the UCC are as follows:

§ 2–326. Sale on Approval and Sale or Return; Consignment Sales and Rights of Creditors. (1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is

(a) a "sale on approval" if the goods are delivered primarily for use, and

(b) a "sale or return" if the goods are delivered primarily for resale.

(2) Except as provided in subsection (3), goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.

(3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum". However, this subsection is not applicable if the person making delivery

(a) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or

(b) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or

(c) complies with the filing provisions of the Article on Secured Transactions (Article 9).

810 ILCS 5/2–326.

§ 9–114. Consignment. (1) A person who delivers goods under a consignment

which is not a security interest and who would be required to file under this Article by paragraph (3)(c) of Section 2–326 has priority over a secured party who is or becomes a creditor of the consignee and who would have a perfected security interest in the goods if they were the property of the consignee, and also has priority with respect to identifiable cash proceeds received on or before delivery of the goods to a buyer, if

    (a) the consignor complies with the filing provision of the Article on Sales with respect to consignments (paragraph (3)(c) of Section 2–326) before the consignee receives possession of the goods; and

    (b) the consignor gives notification in writing to the holder of the security interest if the holder has filed a financing statement covering the same types of goods before the date of the filing made by the consignor; and

    (c) the holder of the security interest receives the notification within 5 years before the consignee receives possession of the goods; and

    (d) the notification states that the consignor expects to deliver goods on consignment to the consignee, describing the goods by item or type.

    (2) In the case of a consignment which is not a security interest and in which the requirements of the preceding subsection have not been met, a person who delivers goods to another is subordinate to a person who would have a perfected security interest in the goods if they were the property of the debtor.

810 ILCS 5/9–114.

■■■■ Under the above statutory framework, a consignor that complies with the notice requirements under § 9–114 will have priority over its consignees' secured creditors, and the case will fall under the exception in § 2–326(3)(c). *See In re Alper–Richman Furs, Ltd.,* 147 B.R. 140, 149–150 (Bankr.N.D.Ill.1992). In Illinois, where there is no applicable sign law, a consignor that has not made the necessary filing might still have superior rights to those of a properly perfected secured creditor of its consignee if it was generally known to the consignee's creditors that the consignee acquired its inventory on a consignment basis. *Id.* The burden of proving the exception is on the consignor. *Id.*

In this case, it is undisputed the defendant did not comply with the requirements of § 9–114 or otherwise notify plaintiff of its interest in the Darby vehicle. Nor has defendant attempted to prove that Unlimited was generally known by its creditors to be substantially engaged in selling the goods of others. Relying on its argument concerning Unlimited's dissolution, defendant argues that plaintiff does not qualify as a creditor having a perfected security interest in the vehicle either because (1) Unlimited lacked the authority to acquire new inventory, or (2) plaintiff's financing statement is ineffective as not naming the debtor. Defendant does not dispute, however, that plaintiff's security agreement provided for an interest in inventory and after-acquired property. This being so, and based on its previous conclusion that plaintiff's financing statement is not defective, this court concludes that plaintiff was a creditor who would have had a perfected security interest in the goods if they were the property of the debtor. Defendant not having argued that the transaction between it or Darby and Unlimited was a security interest,[3] its

---

**3.** As noted in the summary of facts, plaintiff's evidence concerning the intent behind the delivery of the vehicle to Unlimited consists of a letter from one of defendant's employees to Unlimited, in which letter Unlimited is instructed to "list the collateral for 90 days." No other evidence, such as deposition testimony from Darby, has been presented, even though discovery is now closed.

    Defendant would now disavow the instructions in its letter, arguing that because it did not have title to the vehicle, it lacked authority to sell the vehicle. At the same time, there being no evidence as to what transpired between defendant and Darby, its borrower, it is not known whether Darby intended to surrender possession of the vehicle to defendant.

    Notwithstanding defendant's claim of lack of authority to sell the vehicle, that argument does not detain this court. It is undisputed that defendant knew that the vehicle had been brought to Unlimited. Also, defendant has cited no authority to the effect that a secured creditor cannot take steps to protect its collateral where the collateral is entrusted to a merchant in circum-

interest is subordinate to that of plaintiff under § 9–114(2).

█ There remains, however, the question of whether the transaction was a consignment in the first place. Defendant argues that it was not, relying on a trilogy of decisions finding no consignment where the alleged consignee lacked the authority to sell property without the approval of the consignor. *Walter E. Heller & Co. Southeast v. Riviana Foods, Inc.,* 648 F.2d 1059 (5th Cir. 1981); *Allgeier v. Campisi,* 117 Ga.App. 105, 159 S.E.2d 458 (1968); *Founders Inv. Corp. v. Fegett,* 23 UCC Rep.Serv. (Callaghan) 903, 1978 WL 23507 (Ky.Ct.App.1978).

While arguing that Unlimited had authority only to accept offers, defendant presents no direct evidence to that effect, such as the testimony of Darby or its own employees involved in handling the loan. Rather, defendant relies on the absence of testimony as to why Darby returned the vehicle, the fact that language in its letter might be interpreted as limiting Unlimited's authority to that of soliciting bids for the vehicle, and the fact that its letter set a 90–day period for listing the vehicle. The vehicle was, of course, left on Unlimited's premises well beyond the 90–day period, but there is no evidence as to why Darby or defendant did not remove it after the 90 days.

█ Plaintiff responds by noting the number of authorities that have criticized the above-cited trilogy of cases. These other decisions find that the UCC looks to the outwardly visible aspects of a transaction in determining whether an arrangement for the sale of goods is a consignment. *See, e.g., In re Pearson Indus., Inc.,* 147 B.R. 914, 920–927 (Bankr.C.D.Ill.1992); *Bischoff v. Thomasson,* 400 So.2d 359, 367 (Ala.1981). The criteria that establish a consignment within the meaning of § 2–326(3) are: (1) delivery of possession to the consignee, (2) the engaging in the sale of such types of goods by the consignee, and (3) failure of the consignor to give public notice of its retained interest in the goods. *Bischoff, id.* Section 2–326 was intended to apply to cases in which creditors

may have been misled by a secret reservation of title by the consignor. *In re Alper–Richman Furs, Ltd.,* 147 B.R. 140, 150 n. 11 (Bankr.N.D.Ill.1992). The policy of the UCC would be undermined if an owner could show by proof of undisclosed mental operations that the transaction was something other than a consignment. *Bischoff,* 400 So.2d at 367.

On a motion for summary judgment, if a moving party initially shows the court that there is an absence of a question of fact, the nonmoving party has the burden of establishing the existence of a genuine issue as to a material fact. *Klein v. Rush–Presbyterian–St. Luke's Medical Center,* 990 F.2d 279, 283 (7th Cir.1993). The court may rely on the nonmovant to show such a dispute if one exists. *L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561, 567 (7th Cir.1993).

█ Here the court concludes that plaintiff has established all the objective criteria of a consignment, as required under UCC § 2–326(3). Defendant has not presented evidence rebutting this showing, other than to suggest a secret reservation of title which, under the better-reasoned cases, is insufficient to overcome plaintiff's proof of a consignment. The evidence also having established that defendant did not comply with applicable filing requirements and that plaintiff enjoys the status of a perfected secured creditor with a claim to the category of goods at issue, this court concludes that plaintiff is entitled to summary judgment in its favor.

█ As a final note, the court observes that it has not taken into account defendant's argument that, because the Misers never delivered the title to Unlimited in the first place, later transactions were without legal effect. This argument, while intended to establish that Unlimited could not transfer ownership in the vehicle, also undermines defendant's own claim of a security interest in the vehicle. In any event, under Illinois law, a transfer of a certificate of title is not necessarily determinative of ownership of a vehicle. *Dan Pilsen Auto Center, Inc. v. De*

---

stances where the UCC's provisions concerning consignments come into play. This being so, the

argument that defendant was not owner of the vehicle carries no weight in the analysis here.

*Marco,* 156 Ill.App.3d 617, 108 Ill.Dec. 733, 735, 509 N.E.2d 159, 161 (4th Dist.1987). It is possible that one can own a vehicle even though the certificate of title is in the name of another. *Id.,* 108 Ill.Dec. at 735, 509 N.E.2d at 161.

Finally, defendant argues that plaintiff has not addressed its affirmative defenses of estoppel and unclean hands. While this court is not persuaded that plaintiff can be held accountable for the derelictions of Unlimited, it agrees that the circumstances surrounding defendant's repossession of the vehicle might give rise to some claim for reimbursement of defendant's expenses in repairing the vehicle. Accordingly, while plaintiff is granted summary judgment on the question of a prior interest in the vehicle, judgment will not be entered at this point in time. At the status set in the accompanying minute order, the parties should be prepared to address the manner in which they wish to proceed on defendant's affirmative defense.

### CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment is granted.