In re ARTHUR A. EVERTS COMPANY, Debtor.

The LEVERETT CO., Plaintiff,

v.

ARTHUR A. EVERTS COMPANY, Defendant.

Bankruptcy No. 383–01174 M.
Adv. No. 383–1063 M.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Jan. 5, 1984.

Brian Book, Austin, Tex., for debtor, Arthur A. Everts.

John Maxfield, Dallas, Tex., for the First National Bank of Euless.

Charles Perry, Dallas, Tex., for The Leverett Co. and Harold Freeman Jewelry Co.

## MEMORANDUM OPINION

ROBERT C. McGUIRE, Bankruptcy Judge.

In this Chapter 11 proceeding involving the debtor, Arthur A. Everts Co. (hereinafter referred to as "Debtor"), a retail jeweler, the complainants, The Leverett Co. and Harold Freeman Jewelry Co. (hereinafter referred to as "Leverett" and "Freeman," or "Plaintiffs"), filed a motion to lift stay against Debtor, and an adversary complaint against First National Bank of Euless (hereinafter referred to as "Bank") asserting that as consigning suppliers to debtor, they had a superior lien position to that of Bank. Plaintiffs alleged superiority to the Bank's position on three bases:

1. TEX.REV.CIV.STAT.ANN. art. 9018 (Vernon Supp.1982–1983), Artists' Consignment Act;

2. Improper financing statement of Bank under TEX.BUS. and COM. CODE ANN. art. 9.203 and 9.402 (Vernon Supp. 1982–1983) ("U.C.C.");

3. Under U.C.C. 2.326(c).

The following summary constitutes findings of fact and conclusions of law.

On September 2, 1983, the debtor filed a voluntary Chapter 11 petition. The debtor's statement of financial affairs listed the Bank as an equity security holder and showed the debt owed to the Bank to be $483,967.69 with accrued interest as of September 2, 1983 of $25,617.02. The statement of financial affairs did not list either Leverett or Freeman as equity security holders.

Neither Leverett nor Freeman filed financing statements under the U.C.C. with the Secretary of the State of Texas. Furthermore, neither of such suppliers maintained signs on the premises of the debtor evidencing their interest in goods delivered.

The Bank's credit relationship with the debtor had its inception in December, 1978.

Leverett and Freeman, in 1983 and prior to July, 1983, delivered goods to debtor on an alleged "memorandum" in which each attempted to reserve title in itself to the goods delivered.

## THE ARTISTS' CONSIGNMENT ACT—ARTICLE 9018

■ There was some testimony from Leverett and Freeman concerning the artistic nature of some of their jewelry deliveries. However, there was insufficient proof of the uniqueness of the deliveries. Such jewelry was reproduced in varying forms by such suppliers. I find that Plaintiffs' deliveries did not constitute "art" as defined by Article 9018(2)(1). Furthermore, both of the suppliers were corporations and do not appear to meet the definition of "artists" in said Act. The Act appears to apply only to individuals, not to corporate suppliers. Additionally, the debtor, which is a jewelry retail store, does not meet the criteria of "art dealer" and thus, such suppliers fail to qualify under Article 9018(3).

SUFFICIENCY OF BANKS' FINANCING STATEMENT AND SECURITY AGREEMENT UNDER U.C.C. 9.203 and 9.402

The Bank's financing statement was filed on December 11, 1978, in the office of the Secretary of State in Texas showing the debtor's name and mailing address to be: Arthur A. Everts Co., d/b/a Everts Jewelers, P.O. Box 20008, 3257 Cradell, Dallas, Texas 75220. The collateral description on the financing statement showed that it covered: "all inventory, raw materials, work in progress or materials used or consumed in debtor's business whether now owned or hereafter acquired, and all proceeds thereof, whether in the possession of the debtor, warehouseman, bailee, or any other person. *Located at* First National Bank Building Mall, Dallas, Texas, 932 NorthPark Center, Dallas, Texas, 2455 Promenade Center, Richardson, Texas, 3257 Cradell, Dallas, Texas," [emphasis supplied]. The security agreement signed by Debtor with the Bank did not mention location of the collateral and specifically covered "all inventory now owned or hereafter acquired by debtor including all goods held for sale . . . ."

■ The dispute arises because after executing the security agreements with the Bank, the debtor moved its store from C2–932 NorthPark Center in Dallas, Texas, to C2–622 in the same shopping center. Leverett and Freeman claim that since the Bank did not file an amended financing statement showing the new location, then allegedly since the financing statement was specifically limited to goods at a particular location, that it would not perfect a security interest in goods located elsewhere citing *In Re California Pump and Manufacturing Co.,* 588 F.2d 717, 719 (9th Cir.1978). The description of collateral unlimited by location in the security agreement is sufficient to cover all inventory of the debtor unless the alleged limitation on the financing statement restricted the bank's filing to only the one location in NorthPark Shopping Center, and not the new location of the debtor in the same shopping center.

The purpose of the financing statement is to put third parties on notice that a security interest may exist in certain property and that they should contact the parties to obtain the details. *In Re Little Brick Shirthouse, Inc.,* 347 F.Supp. 827 at 829 (N.D.Ill. 1972). See also, *In Re Little Puffer Billy, Inc.,* 16 B.R. 174, 32 U.C.C.Rep. 975 (Bkrtcy. D.Or.1981); *Owen v. McKesson and Robbins Drug Co.,* 349 F.Supp. 1327 (N.D.Fla.1972); *Beneficial Finance Company of Amarillo v. Van Shaw,* 476 S.W.2d 772 (Tex.Civ.App.—Eastland 1972, *no writ*).

The financing statement filed by Bank was sufficient notice to third parties to make inquiry as to the interest of Bank in all inventory used or consumed in the business of debtor.

### U.C.C. 2.326(c)(2)

■ The remaining question in this matter is whether Leverett and Freeman established under U.C.C. 2.326(c)(2) that the debtor conducting his jewelry business was generally known by his creditors to be substantially engaged in selling the goods of others. It is undisputed that the Bank did not have actual knowledge or notice of the alleged consignments of Leverett and Freeman. Thus, *GBS Meat Industry Pty. Limited v. Kress-Dobkin Co., Inc.,* 474 F.Supp. 1357 (W.D.Pa.1979) as cited by Plaintiffs is not applicable. Although not undisputed, I find from a preponderance of the evidence that the Bank did not have actual or constructive notice that the debtor was substantially engaged in selling consigned goods, if it was. I further find that Leverett and Freeman failed to prove by a preponderance of the evidence that debtor was generally known by his creditors to be substantially engaged in selling the goods of others, if it was. Of the approximate $690,-000 in inventory shown on the debtor's schedules, approximately $75,000 thereof was on consignment. Debtor testified that its "consigned" merchandise generally exceeded such amount, but it was unable to give any further specifics on amounts. If the test under U.C.C. 2.326(c)(2) is whether the debtor was known to be engaged in *primarily* selling the goods of others (as set

forth in the U.C.C. official comment), then the undisputed facts show the debtor was not primarily engaged in selling the goods of others. The plain wording of U.C.C. 2.326(c)(2) appears to indicate that "substantially engaged in selling the goods of others" is not limited to one "primarily" engaged in selling the goods of others as suggested by the official comment of the permanent U.C.C. editorial board. *Guardian Discount Co. v. Settles,* 3 U.C.C.Rep. 838, 114 Ga.App. 418, 151 S.E.2d 530 (1966).

Evidence presented by the plaintiffs consisted of the testimony of a representative of each together with the testimony of an alleged consignor, and an alleged past consignor. Some of such parties testified regarding their beliefs as to knowledge of creditors of the debtor concerning consignment purchases of the debtor. Plaintiffs also offered the testimony of a representative of the debtor which was not conclusive on the issue. On its schedules debtor listed 11 priority creditors, 4 secured creditors and 149 unsecured creditors for a total of approximately 164 creditors. Such creditors were further broken down in amounts as follows: wages having priority, $2,566; customer deposits of money, $5,359; taxes to the U.S., $31,553; taxes owed states, $4,645; taxes owed to other taxing authorities, $20,765; secured claims, $509,584; and unsecured claims without priority, $271,706.

Plaintiffs failed to prove by a preponderance of the evidence that the debtor "generally" (with respect to the larger part, or most part, of its creditors) was known to be substantially engaged in selling the goods of others, if it was. *In Re Webb*, 13 U.C.C. Rep. 394 (Bkrtcy.S.D.Tex.1973). U.C.C. 2.326(c)(2) does not speak to the amount of indebtedness, but to the number of "creditors" knowing of debtor's consignment purchases.

In a similar situation, the New Jersey Superior Court found that where ten of a debtor's trade creditors may have known of a consignment situation, it did not mean that it was "generally known" by a debtor's creditors, (where the debtor had fifty-five to sixty other general creditors). *Vonins,*

*Inc. v. Raff,* 5 U.C.C.Rep. 433, 101 N.J.Super. 172, 243 A.2d 836 (1968).

The goods of Leverett and Freeman are found to be sale or return items under U.C.C. 2.326(c)(2) and the Bank, therefore, has priority. Accordingly, judgment will be entered for Bank.