**In re WEDLO HOLDINGS, INC., Wedlo Finance Inc., an Alabama corporation, Wedlo Inc. an Alabama corporation, Debtors.**

**Heller Financial, Inc., Plaintiff,**

**v.**

**Samuel Schick, Inc., Defendant.**

**Bankruptcy Nos. 96 B 02698, 96 B 02701, 96 B 02702. Adversary No. 96 A 01025.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

May 16, 2000.

Timothy J. Patenode, James W. Hutchinson, Warren Y. Nakatani, Katten, Muchin & Zavis, Chicago, IL, for Heller Financial, Inc.

Paul M. Bauch, Paul M. Bauch & Assoc., Chicago, IL, for Samuel Schick, Inc.

David Missner, Chicago, IL, for Wedlo Holdings, Inc., Wedlo Finance, Inc. and Wedlo Inc.

## MEMORANDUM OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ERWIN I. KATZ, Bankruptcy Judge.

This adversary case is a core proceeding in the bankruptcy filed by Wedlo Holdings, Inc., Wedlo Finance, Inc. and Wedlo Inc. ("Wedlo" or "Debtors") under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Heller Financial, Inc. ("Heller"), a secured creditor of Wedlo, filed a complaint against Samuel Schick, Inc. ("Schick"), a supplier of inventory to Wedlo, to determine validity, priority and extent of liens.

This matter comes before the Court on Defendant's Motion for Summary Judgment. Both parties submitted statements of uncontested material facts. Because there are genuine issues of material fact regarding whether Wedlo was generally

known by its creditors to be substantially engaged in selling the goods of others and whether Schick filed a financing statement identifying Wedlo as debtor, Defendant's Motion for Summary Judgment is denied.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). Venue lies under 28 U.S.C. § 1409.

## BACKGROUND

The following facts were taken from the 402(M) and 402(N) statements:

Debtors filed their petitions for relief under Chapter 11 on February 2, 1996. Prior to this, Wedlo was one of the largest jewelry retailers in the Southeastern United States. Wedlo operated two divisions, Lorch Diamond Center ("Lorch") a full-service credit jeweler offering a broad line of jewelry, including diamonds, semi-precious gems, gold earrings, chains, rings, bridal sets and watches, and Parisian, which offered the same products but appealed to higher income customers. Robert Keller ("Keller") served as President and Chief Executive Officer of Debtors from September 1990 until October 1996.

Historically, Wedlo obtained 15–20% of its inventory through consignments, also known in the industry as "memorandum" supply. Lorch and Parisian obtained inventory through consignment agreements with various consignors; there are forty such entities which consigned inventory or delivered merchandise on memorandum to Wedlo. The consignors have filed approximately $2,700,000.00 in claims against Debtors' estate. Schick is one such entity and claims to have a perfected security interest or consignment interest certain of Wedlo's inventory and the cash and non-cash proceeds of the inventory. Heller is a secured creditor of Wedlo.

Schick alleges that it is entitled to summary judgment against Heller with respect to the priority of its interest in the consignment goods. In support of this argument, Schick states that Wedlo was generally known by its creditors to be substantially engaged in the business of selling the goods of others. Therefore, Schick contends that its interest in the consigned goods is protected under Uniform Commercial Code § 2–326(3)(b). Heller, however, argues that Wedlo is not substantially engaged in selling the goods of others, and that Schick has presented no competent evidence to support its argument that Wedlo is generally known by its creditors as dealing in the goods of others.

## DISCUSSION

### I. Standards for Summary Judgment

The purpose of summary judgment under Federal Rule of Civil Procedure 56 (adopted by Federal Rule of Bankruptcy Procedure 7056) is to avoid unnecessary trials when there is no genuine issue of material fact. *Farries v. Stanadyne/Chicago Division*, 832 F.2d 374, 378 (7th Cir. 1987), *Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Assoc. of Indianapolis*, 806 F.2d 146, 149 (7th Cir. 1986). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), *Matsushita Elect. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986), *Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir.1990). The existence of factual disputes is sufficient to deny summary judgment only if the disputed facts are outcome determinative. *UNR Industries, Inc. v. Walker (In re UNR Industries)*, 224 B.R. 664, 665 (Bankr.N.D.Ill.1998), *Jones Truck Lines*,

*Inc. v. Republic Tobacco, Inc.*, 178 B.R. 999, 1003 (Bankr.N.D.Ill.1995). The burden is on the moving party to show that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552, *Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56, *In re Chicago, Missouri & Western Ry. Co.*, 156 B.R. 567 (Bankr. N.D.Ill.1993). This burden is met when the record, as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348.

On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348, *citing United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, the party opposing the motion may not rest upon pleadings, allegations, or denials. The response of that party must set forth specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

II. Application of Summary Judgment Standards

In applying the above standards to the motions here, this Court finds that summary judgment is not appropriate because genuine issues of material fact exist. At issue here is whether Wedlo was generally known by its creditors to be substantially engaged in selling the goods of others, and whether Schick filed a financing statement.

■ The Uniform Commercial Code Article 2 applies in this case because the transaction here was a transaction in goods. 810 ILCS 5/2–102; *Barber v. McCord Auto Supply, Inc. (In re Pearson Industries, Inc.)*, 147 B.R. 914, 920 (Bankr. C.D.Ill.1992). There is a conflict here between Schick, the seller of goods on sale or return, and Heller, a secured creditor of Wedlo, the buyer of those goods. Specifi-

cally, the issue turns on which of these two parties has priority with respect to the inventory, and its proceeds, sold on sale or return to Wedlo by Schick.

■ Section 2–326 of the Uniform Commercial Code (810 ILCS 5/2–326) provides:

Sale on Approval and Sale or Return; Consignment Sales and Rights of Creditors. (1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is

(a) a "sale on approval" if the goods are delivered primarily for use, and

(b) a "sale or return" if the goods are delivered primarily for resale.

(2) Except as provided in subsection (3), goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.

(3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business to goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum." However, this subsection is not applicable if the person making delivery

(a) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or

(b) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or

(c) complies with the filing provisions of the Article on Secured Transactions (Article 9).

A transaction is on a sale or return basis if three conditions are satisfied: (1) the goods are delivered to a person for sale, (2) that person maintains a place of business at which he deals in goods of the kind involved, and (3) he deals under a name other than the name of the person making the delivery. *In re Truck Accessories Distributing*, 238 B.R. 444, 447 (Bankr. E.D.Ark.1999). The transaction here was a sale or return, because the jewelry was delivered to Wedlo for sale, Wedlo maintained a place of business at which it dealt in jewelry, and Wedlo dealt under the names Lorch and Parisian, not Schick. As the statute indicates, goods sold on sale or return are subject to the claims of the buyer's creditors while in the buyer's possession. However, § 2–326(3) provides three exceptions, all of which deal with "true" consignments and which allow the seller, or consignor, to avoid the reach of the buyer's, or consignee's, creditors. 8 Hawkland UCC Series § 9–114:02 (1999). These exceptions involve the consignor giving notice to the consignee's creditors that the goods do not in fact belong to the consignee; when the consignor gives such notice, the transaction is treated as a true consignment rather than a sale or return.

■ The first exception provides that a consignor can give notice of its ownership of the consigned goods by complying with applicable law providing for a consignor's interest or the like to be evidenced by a sign. 810 ILCS 5/2–326(3)(a); 6 Bankr. Dev. J. 73, 82 (1989). This exception is not available in this case because there is no sign law in Illinois. *ITT Commercial Finance Corp. v. Unlimited Automotive, Inc.*, 166 B.R. 637, 643 (N.D.Ill.1994).

■ The second exception provides that a transaction may be treated as a true consignment and the consignor's interest may be protected if the consignor establishes that the "person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others." 810 ILCS 5/2–326(3)(b). The burden of establishing this general knowledge is on the consignor. *In re BRI Corp.*, 88 B.R. 71 (Bankr.E.D.Pa. 1988) (holding that the burden of establishing general knowledge is on creditor and that creditor must show that most of the creditors know of the consignment nature; showing that 250 out of 600 suppliers supplied goods on consignment inadequate). The § 2–326 majority test is measured by the number of creditors, not the amount of claims. *Steege v. Affiliated Bank/North Shore Nat'l (In re Alper–Richman Furs, Ltd.)*, 147 B.R. 140, 150 (Bankr.N.D.Ill. 1992) (citation omitted).

■ Nowhere in its 402(M) statement did Schick provide any indication of how many of its creditors knew that Wedlo was substantially engaged in selling the goods of others. As the *Alper–Richman Furs* case illustrates, the test set forth in § 2–326(3)(b) is a majority test, measured by the number of creditors. Schick has not provided evidence of how many of its creditors knew that Wedlo was substantially engaged in selling the goods of others. Schick did provide the affidavit of Samuel Schick ("Samuel"), President of Schick, in which he stated that, based upon his personal knowledge, it is his opinion that it is generally known throughout the jewelry trade that retailers obtain substantial portions of their jewelry inventory on consignment. Schick also provided the affidavit of Keller, in which he stated that Wedlo obtained some of its inventory on a consignment/memorandum basis, and that he occasionally discussed Wedlo's dealing in consignment/memorandum goods with Wedlo's significant trade vendors. However, Samuel's opinion that it is generally known that retailers obtain inventory on consignment does not show that Wedlo in fact did so, and that Wedlo's creditors generally knew of this. Keller's statement that Wedlo obtained some inventory on consignment and that he had discussions

with significant trade vendors also does not show that a majority of Wedlo's creditors knew that Wedlo was substantially engaged in selling the goods of others. Therefore, summary judgment is not appropriate because Schick has failed to show that Wedlo was generally known by its creditors to be substantially engaged in selling the goods of others.

■ Additionally, in the 402(M) statement, Schick stated that historically Wedlo obtained 15–20% of the inventory in its Lorch and Parisian divisions through consignments. Based upon this statement, this Court finds that, as a matter of law, Wedlo was not substantially engaged in selling the goods of others. The consignee must be "primarily" engaged in selling the goods of others in order for the consignor to qualify for the § 2–326(3)(b) exception. *Multibank Nat'l of Western Mass., N.A. v. State Street Auto Sales, Inc. (In re State Street Auto Sales, Inc.)*, 81 B.R. 215, 218 (Bankr.D.Mass.1988) (holding that sale or return accounting for 20% of total inventory is not enough to consider debtor as being "primarily" engaged in selling the goods of others). Because Wedlo was not substantially engaged in selling the goods of others, summary judgment in Schick's favor is not appropriate.

■ The third and final exception provides that the consignor's interest will be protected if it complies with Article 9 filing provisions. 810 ILCS 5/2–326(3)(c). 810 ILCS 5/9–114 provides:

Consignment. (1) A person who delivers goods under a consignment which is not a security interest and who would be required to file under this Article by paragraph (3)(c) of Section 2–326 has priority over a secured party who is or becomes a creditor of the consignee and who would have a perfected security interest in the goods if they were the property of the consignee, and also has priority with respect to identifiable cash proceeds received on or before delivery of the goods to a buyer, if

(a) the consignor complies with the filing provision of the Article on Sales with respect to consignments (paragraph (3)(c) of Section 2–326) before the consignee receives possession of the goods; and

(b) the consignor gives notification in writing to the holder of the security interest if the holder has filed a financing statement covering the same types of goods before the date of the filing made by the consignor; and

(c) the holder of the security interest receives the notification within 5 years before the consignee receives possession of the goods; and

(d) the notification states that the consignor expects to deliver goods on consignment to the consignee, describing the goods by item or type.

(2) In the case of a consignment which is not a security interest and in which the requirements of the preceding subsection have not been met, a person who delivers goods to another is subordinate to a person who would have a perfected security interest in the goods if they were the property of the debtor.

Thus, a consignor that complies with the § 9–114 notice requirements will have priority over the consignee's secured creditors because its interest will be protected by the § 2–326(3)(c) exception. *ITT Commercial Finance Corp.*, 166 B.R. at 643 (citation omitted).

■ Despite this, Schick argues in its Reply Memorandum in Support of Summary Judgment that § 9–114 is inapplicable to this case. However, Schick's 402(M) statement contains the assertion that Schick filed UCC–1 financing statements identifying Wedlo as debtor. In his affidavit, Samuel stated that Wedlo executed a UCC–1 financing statement which Schick caused to be filed in Alabama, and a copy of a financing statement naming Wedlo as debtor and Schick as secured party is attached as an exhibit. However, in its 402(N) statement, Heller disagrees

that Schick filed such a UCC–1 financing statement and attached a UCC Lexis–Nexis search purporting to show that no such financing statement was filed. In deciding a summary judgment motion, the court should not "weigh the evidence." *S.N.A. Nut Co. v. Haagen–Dazs Co., Inc. (In re S.N.A. Nut Co.)*, 226 B.R. 869, 871 (Bankr. N.D.Ill.1998) (citations omitted). Because each party has presented some evidence regarding the financing statement, and this Court, on a motion for summary judgment, cannot weigh the evidence, summary judgment is not appropriate on the issue of whether Schick filed a UCC–1 financing statement with respect to Wedlo's inventory.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is denied.