In re CORVETTE COLLECTION OF BOSTON, INC., Debtor.

Robert C. Furr, Trustee, Plaintiff,

v.

The Corvette Experience, Inc., and Chester J. Finley, Defendants.

Bankruptcy No. 01–36177–BKC–SHF.
Adversary No. 02–3190–BKC–SHF–A.

United States Bankruptcy Court, S.D. Florida.

June 11, 2003.

Bradley S. Shraiberg, Boca Raton, FL, for Plaintiff.

Steven W. Hyatt, Coral Gables, FL, for Defendants.

## MEMORANDUM OPINION

STEVEN H. FRIEDMAN, Bankruptcy Judge.

THIS MATTER came before the Court on April 28, 2003 for trial upon the complaint to determine the validity, priority and extent of an alleged lien filed by Plaintiff, Robert C. Furr ("Trustee") against Defendants Chester J. Finley ("Mr. Finley") and The Corvette Experience, Inc. ("Corvette Experience"). The complaint seeks a determination that certain vehicles in the possession of the Trustee constitute property of the estate pursuant to 11 U.S.C. §§ 541 and 551. The Court, having reviewed the testimony and evidence presented, considered the arguments of counsel, and being otherwise fully advised in the premises, issues the following memorandum opinion.

On November 20, 2001, Corvette Collection of Boston, Inc. (the "Debtor") filed a voluntary Chapter 11 petition. Thereafter, on January 22, 2002, the case was converted to a case under Chapter 7. The Debtor was a used Corvette dealership located in Pompano Beach, Florida. The Debtor owned some of its inventory outright and held the rest on consignment. In addition to selling used Corvettes, the Debtor also serviced Corvettes and sold Corvette parts.

On the petition date, the Debtor had in its possession six Corvettes that were consigned by the Defendants. Three of the Corvettes, namely:

a 1965 Chevrolet Corvette, VIN 194375S103296, titled in the name Corvettes North, Inc. and assigned to Corvette Experience; a 1972 Chevrolet Corvette, VIN 1Z37W2S503815, titled in the names Domingo Fernandez and Karen

L. Condon and assigned to Corvette Experience; and a 1969 Chevrolet Corvette, VIN 194379S736234, titled in the name Juan J. Granado and assigned to Corvette Experience;

were held by the Debtor pursuant to written consignment contracts (the "Written Consigned Vehicles"). The other three Corvettes, namely:

a 1964 Chevrolet Corvette, VIN 40837S101918 titled in the name Kirk E. Shultz and assigned to Corvette Experience; a 1975 Chevrolet Corvette, VIN 1Z67J5S418899, titled in the name Sandra J. or R.L. Hassel and assigned to Corvette Experience; and a 1978 Chevrolet Corvette, VIN 1Z87L8S428041, titled in the name Edward L. Winik and assigned to Corvette Experience;

were in the Debtor's possession pursuant to alleged oral consignment contracts (the "Orally Consigned Vehicles"). Neither Defendant filed a Uniform Commercial Code ("UCC") financing statement or recorded a security agreement with the Florida Department of Motor Vehicles. Rather, the Defendants withheld their respective Corvettes' titles prior to placing the Corvettes on consignment with the Debtor.

By filing this adversary proceeding, the Trustee asserts that the Defendants' interests in the Corvettes are unsecured and can be avoided pursuant to 11 U.S.C. § 544(a)(1), which vests the Trustee with the authority, as of the petition date, to avoid any transfer or obligation of the Debtor which is avoidable by a hypothetical creditor on a simple contract with a judicial lien on the property of the Debtor unsatisfied as of the date of the commencement of the case. The Trustee further asserts that the six vehicles at issue were consigned by the Defendants to the Debtor. The Trustee contends that because the Defendants did not properly perfect

their consignment interests by complying with the requirements set forth in Fla. Stat. § 672.326, the Debtor held the consigned Corvettes "sale or return," thereby subjecting the vehicles to the claims of the Debtor's creditors. On the other hand, the Defendants contend that because the creditors of the Debtor were aware that the Debtor was substantially engaged in selling the consigned vehicles, the vehicles were held by the Debtor "sale on approval." Therefore, the Defendants argue, the Corvettes are not subject to the claims of the Debtor's creditors.

Three main issues must be determined. The first issue is whether the Defendants delivered to the Debtor the six Corvettes. The second issue is whether the Debtor's creditors were aware that the Debtor was substantially engaged in selling the goods of others because, if so, the Debtor held the Corvettes on approval, thereby rendering the Corvettes beyond the reach of the Debtor's creditors. Finally, regarding the orally consigned vehicles, the last issue is whether the Statute of Frauds renders the oral consignment agreements unenforceable.

A. The vehicles were delivered to the Debtor.

■ At trial, the Defendants argued that the Florida consignment statute, Fla. Stat. § 672.326, does not apply because the Corvettes were never delivered to the Debtor. Section 672.326(1) states, "Unless otherwise agreed, if **delivered** goods may be returned by the buyer even though they conform to the contract, the transaction is either a 'sale on approval' or a 'sale or return.'" Fla. Stat. 672.326(1). Defendants argue that because they retained the title certificates to the Corvettes, they did not physically deliver the vehicles to the Debtor, and therefore, Section 672.326 does not apply. This argument fails because it contradicts the definition of "delivery" as used throughout the UCC.

Although the UCC does not provide a definition of the term "delivery" as it relates to the delivery of goods,[1] Section 2–401, passing of title, is analogous to delivery. UCC § 2–401, as adopted by Fla. Stat. § 672.401(2) provides,

Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading; . . . .

Fla. Stat. § 672.401(2). Furthermore, Fla. Stat. § 319.27(2) provides that

no lien for purchase money or as security for a debt in the form of a security agreement . . . or other similar instrument or any other nonpossessory lien . . . upon a motor vehicle or motor home shall be enforceable in any of the courts of this state against creditors or subsequent purchasers for valuable consideration and without notice, unless a sworn notice of lien has been filed in the department and such lien has been noted upon the certificate of title . . . .

Fla. Stat. § 319.27(2).

In the instant transaction, it is undisputed that the Defendants physically delivered to the Debtor the six Corvettes. In effect, according to section 319.27, the Defendants' retention of the titles was a mere

---

1. UCC § 1–201(14) defines delivery only with respect to instruments, documents of title, chattel paper and certificated securities.

failed attempt to grant themselves a security interest. Fla. Stat. § 319.27; *See also In re Petsch*, 82 B.R. 605 (Bankr.M.D.Fla. 1988) (finding that a security interest was created in a vehicle where the buyer signed an agreement contemplated to be security agreement that contained a description of vehicle, value had been given, and the vehicle had been titled in the buyer's name; however, the security interest was not perfected because the creditor did not file a sworn notice of lien with the Department of Motor Vehicles).

Additionally, pursuant to the parties' consignment agreements, had the Debtor sold the Corvettes at the minimum price permitted by the agreements, the Defendants would have been required to turn over the titles. Had the Defendants refused to turnover the titles, title still would have passed to the third party purchaser. *See Crawford v. Commercial Credit Corp.*, 167 So.2d 28 (Fla. 3d DCA 1964) (holding that the certificate of title is not title itself, but merely evidence of title which, in certain circumstances, will entitle an innocent third person without knowledge to rely on the certificate). *See also Palm Beach Auto Brokers, Inc. v. DeCarlo*, 620 So.2d 250, 252 (Fla. 4th DCA 1993) (finding that used car dealer's failure to timely transfer to purchaser title to automobile did not indicate that the dealer did not intend sale of automobile; provision of UCC that, unless otherwise explicitly agreed, title passes to buyer at time and place at which seller completes his performance with reference to physical delivery of goods governed transaction so that title passed upon physical delivery of automobile from dealer to purchaser); *Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht*, 625 F.2d 44 (5th Cir.1980) (finding that since the sale of a yacht from a dealer to a purchaser was in no way contingent or dependent upon the delivery of a document of title, title to the yacht, which was identified at the time of the contract, passed at such time; thus, the purchaser was a buyer in the ordinary course of business whose interest in the yacht, under Florida law, had priority over any interest of manufacturer's secured party).

Since failing to turn over the physical title does not affect ownership, it is not determinative on the issue of whether the Defendants "delivered" the Corvettes when they placed them into the Debtor's inventory. Once the Defendants physically delivered the Corvettes to the Debtor, and the Debtor placed the Corvettes into its inventory, a consignment relationship was created between the Debtor and the Defendants. This consignment interest is governed by Fla. Stat. § 672.326.

B.   The consigned vehicles are assets of the estate.

■   Consignments are governed by Florida Statute § 672.326, which adopts Articles 2 and 9 of the UCC. UCC § 2–326(1). This provision recognizes two types of consignments. In a "sale on approval" transaction, the consignor delivers goods to the consignee primarily for use. Fla. Stat. 672.326(1)(a). Goods held on approval are not subject to the claims of the consignee's creditors until acceptance, and the consignor need not take any action to protect its interest in the goods. On the other hand, in a "sale or return" consignment, the consignor delivers goods to the consignee primarily for resale. Fla. Stat. 672.326(1)(b). Goods held "sale or return" are subject to the claims of the consignee's creditors. More importantly, pursuant to § 544(a) of the Bankruptcy Code, all goods held by the Debtor sale or return become assets of the estate. *See In re New York Diamond & Jewelry Exchange, Inc.*, 26 B.R. 32 (Bankr.S.D.Fla.1982).

With regard to consigned goods, there is a presumption that goods are held by the debtor "sale or return;" therefore, the goods are subject to the claims of the debtor's creditors. Fla. Stat. § 672.326(3). However, the consignor may overcome this presumption by proving (i) he or she has complied with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or (ii) he or she established that the person conducting the business is generally known by his or her creditors to be substantially engaged in selling the goods of others, or (iii) he or she complied with the filing provisions of the chapter on secured transactions (Chapter 679). Fla. Stat. § 672.326(3)(a) through (c). In the instant case, it is undisputed that neither Defendant complied with two of the exceptions since neither Defendant recorded a UCC–1 financing statement or placed a sign above the Corvettes stating that they were held on consignment. Thus, the second issue before this Court is whether the Debtor is a company that is generally known by its creditors to be substantially engaged in selling the goods of others.

Since there is a presumption that the Debtor holds the Corvettes on a "sale or return" basis, the burden of proof is on the Defendants to prove by a preponderance of the evidence that the Debtor was generally known by its creditors to be substantially engaged in the sale of goods of others. *See In re New York Diamond & Jewelry Exchange, Inc.,* 26 B.R. 32, 33 (Bankr.S.D.Fla.1982). The Defendants must prove by a preponderance of the evidence (1) that the consignee is substantially engaged in selling the goods of others and (2) that the debtor is generally known by the creditors of the consignee that this is the case. *Id. See also In re Arthur A. Everts Co.,* 35 B.R. 706, 708 (Bankr.N.D.Tex.1984); *Steege v. Affiliated*

*Bank/N. Shore Nat'l,* 147 B.R. 140, 150 (Bankr.N.D.Ill.1992). Both prongs of this test must be satisfied in order for the consignor to overcome the presumption that the goods are held "sale or return." *Id.; see also In re State St. Auto Sales,* 81 B.R. 215, 218 (Bankr.D.Mass.1988) (finding that even if "generally known" prong met, consignor still has to prove the "substantially engaged" prong to prevail); *ATG Aerospace, Inc. v. High–Line Aviation, Inc.,* 149 B.R. 730, 738 (Bankr.N.D.Ga. 1992).

As to the first prong, whether the Debtor was substantially engaged in selling the goods of others, the Defendants presented no evidence regarding the Debtor's inventory on the petition date. The parties stipulated that the Debtor was a used Corvette dealership that also serviced Corvettes and sold Corvette parts. The parties also stipulated that the Debtor owned some of its used Corvettes and consigned the rest. To meet their burden, Defendants, experienced consignors, testified that most of the Debtor's inventory was held on consignment and that everybody who wanted to sell a Corvette knew that the Debtor primarily sold consigned vehicles. This testimony falls well short of the Defendant's burden of proving by a preponderance of the evidence that the consignee was substantially engaged in selling the goods of others. *See Valley Media,* 279 B.R. at 126; *see also Heller Fin., Inc. v. Samuel Schick, Inc. (In re Wedlo Fin., Inc.),* 248 B.R. 336, 342 (Bankr.N.D.Ill. 2000) (holding as a matter of law that consignee who obtained only 15% to 20% of its inventory on consignment was not substantially engaged in selling goods of others).

With regard to the second prong, the Defendants also fell short of their burden. To satisfy the "generally known" prong of the test, the consignors must prove that a

majority of the debtor-consignee's creditors were aware that the consignee was substantially engaged in selling the goods of others, *i.e.* consignment sales. That majority is determined by the number of creditors, not by the amount of their claims. *See Valley Media,* 279 B.R. at 126; *In re Wicaco Mach. Corp.,* 49 B.R. 340, 344 (E.D.Pa.1984) (holding that one-fifth of creditors knowing of consignment relationship does not satisfy general knowledge requirement, notwithstanding that such creditors represented 63% of claims against debtor); *see also In re BRI Corp.,* 88 B.R. 71, 75 (Bankr.E.D.Pa.1988) (holding that consignor must show that most of consignee's creditors knew of consignment practice and must establish number of such creditors); *In re State St. Auto Sales,* 81 B.R. at 218 (ruling that consignor must establish the majority of creditors in number, not amount of claims); *In re Wedlo Fin.,* 248 B.R. at 341 (same).

■ *Sub judice,* according to the Debtor's schedules, consignors constitute only a portion of the Debtor's creditors. The Debtor has a number of trade creditors such as utility companies and parts suppliers. The Trustee presented the testimony of representatives of two trade creditors, Inter–Tel Technologies (a telephone leasing company) and Dixie Staffing (an employee staffing company), both of whom testified that they had no knowledge as to whether the Debtor owned any inventory on consignment. The Defendants provided no evidence to establish that a traditional trade creditor would believe that the Debtor was substantially engaged in the sale of goods of others. In fact, Mr. Finley testified that it would have been detrimental to the Debtor had third parties known that the Debtor was a consignment shop because potential purchasers would try to contact the Corvette owners directly to "cut out the middle-man" and obtain a

better price. Furthermore, in order to satisfy their burden of proof, the Defendants testified that they believed Corvette Collection's creditors perceived the Debtor to be a consignment shop. This testimony is insufficient to satisfy the Defendants' burden of proof. Testimony as to general knowledge in the industry is insufficient to prove knowledge by a majority of creditors. *See Valley Media,* 279 B.R. at 126; *Wedlo Holdings,* 248 B.R. at 341–42.

This case is factually similar to *In re Valley Media, Inc.,* 279 B.R. 105 (Bankr. D.Del.2002). In *Valley Media,* some of the debtor's vendors had entered into consignment arrangements with the debtor prior to the debtor's filing for bankruptcy. *Id.* at 115. The consigned inventory was commingled with all of the other inventory of the debtor at two warehouse locations. *Id.* at 116. No signs were posted at the warehouses, and there were no signs or markings on the consigned inventory indicating that the inventory had been obtained on a consignment basis. *Id.* When the debtor moved the bankruptcy court to sell all of its inventory, the consignment vendors objected arguing that they owned their consignment inventory by virtue of their consignment arrangements. *Id.* at 121–122. The court observed that the consignors could have obtained a prior interest in their consigned goods if they had either (1) filed UCC–1 financing statements identifying their goods as required under UCC Article 9, or (2) proved that the consignee was generally known by its creditors to be substantially engaged in selling the goods of others. *Id.* at 123. *See also In re New York Diamond & Jewelry Exchange, Inc.,* 26 B.R. 32 (Bankr.S.D.Fla.1982) (Plaintiff, who left diamond with debtor, but failed to perfect its security interest by filing financing statement and failed to establish that debtor was generally known by its creditors to be substantially engaged in sale of goods of

others, had unperfected security interest in diamonds, subject to trustee's right, and since trustee did not have diamond among assets of estate, trustee was entitled to judgment against plaintiff); *ITT Commercial Fin. Corp. v. Unlimited Auto., Inc.,* 166 B.R. 637 (N.D.Ill.1994) (secured creditor of debtor-dealer had priority over consignor of motor vehicle, where consignor did not comply with applicable filing requirements of UCC and secured creditor enjoyed status of perfected secured creditor with claim to inventory of debtor).

In the instant case, like in *Valley Media,* the Defendants could have obtained a prior interest in their consigned goods if they had either filed UCC–1 financing statements identifying their goods as required under UCC Article 9, or proved that the Debtor was generally known by its creditors to be substantially engaged in selling the goods of others. However, the instant Defendants did neither. They did not file an appropriate UCC financing statement, and they did not prove by a preponderance of the evidence that the debtor was substantially engaged in selling the goods of others. Therefore, the Debtor held the Corvettes on a "sale or return" basis at the time the Debtor filed for Bankruptcy. Accordingly, the Corvettes are subject to the claims of the Debtor's creditors, and the Trustee may, for the benefit of the estate, sell the Corvettes free and clear of the Defendants' interests.

C. The oral consignment agreements are not barred by the Statute of Frauds.

█ Finally, the Defendants argue that the alleged oral consignment agreements are unenforceable and barred by the Statute of Frauds. Fla. Stat. § 672.201 states:

Except as otherwise provided in this section a contract for the sale of goods for the price of $500.00 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker.

The Trustee agrees that the statute of frauds governs the alleged oral consignment agreements; however, the contracts are not barred because two exceptions to the statute of frauds, admission and acceptance, apply to the instant situation. Fla. Stat. § 672.201(3) sets forth three exceptions to the statute of frauds. Specifically,

(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable:

(a) If the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is receive and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

(b) If the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

(c) With respect to goods for which payment has been made and accepted or which have been received and accepted (s.672.606).

At trial, Mr. Finley testified that he regularly placed cars on consignment with the Debtor, as well as other dealerships, without signing a written consignment contract. Although Mr. Finley claimed he placed the Corvettes in the Debtor's possession for the purposes of safekeeping

and storage, he testified that there was an oral price limit set for each of the Orally Consigned Corvettes prior to leaving them with the Debtor and that he would not have left the cars with the Debtor unless there was an agreed upon price. This testimony constitutes an admission pursuant to Fla. Stat. § 672.201(3)(b) that the Orally Consigned Corvettes were in the Debtor's possession at the time of filing pursuant to an enforceable oral consignment agreement. *See Faw v. Greenwood*, 101 Idaho 387, 613 P.2d 1338 (1980) (regardless of whether consignment arrangement constituted a sale within meaning of UCC so as to require compliance with statute of frauds, such oral agreement was enforceable against buyer of business, who admitted in his testimony that agreement was made).

Similarly, since Mr. Finley admits that the Corvettes were placed with the Debtor with a set price established for the prospective sale of each vehicle, then once the Corvettes were physically placed in the Debtor's inventory, the Debtor accepted the goods as defined by Fla. Stat. § 672.201(3)(c). Acceptance is defined under Fla. Stat. § 672.606:

(1) Acceptance of goods occurs when the buyer:

(a) After a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that the buyer will take or retain them in spite of their nonconformity; or

(b) Fails to make an effective rejection (s.672.602(1)), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

(c) Does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by her or him.

In the instant case, Mr. Finley left the Orally Consigned Corvettes with the Debtor with a set price to sell them. Once the Debtor placed the Corvettes into its inventory, it committed an act inconsistent with the seller's ownership. Similarly, the Debtor never rejected the Orally Consigned Corvettes. *See Steege v. Affiliated Bank/N. Shore Nat'l.*, 147 B.R. 140 (Bankr.E.D. Ill 1992) (Under Illinois Statute of Frauds, no writing was required to evidence consignment agreement between retailer furrier and discount furrier; consignment arrangement came within statute's exception applicable when purchaser has received and accepted goods, and within exception applicable when purchaser regularly accepts goods from seller). Like *Steege*, in the instant case, the Defendant had a history of selling consigned vehicles with the Debtor pursuant to oral consignment agreements wherein the Defendant would deliver and the Debtor would accept Defendant's cars pursuant to the oral arrangement. Therefore, the Court holds that the Statute of Frauds does not apply to the instant situation.

D. Conclusion

Because the Debtor held all six Corvettes on a "sale or return" basis at the time the Debtor filed its bankruptcy petition, the Corvettes are subject to the claims of the Debtor's creditors. Thus, pursuant to Section 544(a)(1) of the Bankruptcy Code, the Trustee may avoid the Defendants' interests in the Corvettes for the benefit of the estate. Accordingly, it is

**ORDERED THAT:**

(1) All six Corvettes are deemed assets of the estate free and clear of any equitable or legal claims of either Defendant.

(2) The Trustee may sell the Corvettes pursuant to the Bankruptcy Code.