FARMER, J.
 

 Opposing creditors clash over security interests in a painting found in the inventory of a failed art gallery. One creditor is its operating capital lender claiming a perfected security interest in all its inventory. The other is a consignor who placed a painting with the gallery for sale but without perfecting his interest in the consigned goods. Concluding that the governing statutes for security interests give the priority to the lender, we reverse the judgment awarding the painting to the consign- or.
 

 Lender made a series of loans totaling $300,000 over a three-year period to a New York corporation doing business in Palm Beach under the trade name
 
 Style de Vie.
 
 Apparently its lifestyle did not allow it to pay its lender, for the gallery defaulted on the loan. Lender sued to foreclose its security interest on the gallery’s inventory. Lender proved non-payment and that it had perfected its security interest by filing a UCC-1 financing statement in Florida. Lender obtained a judgment and a writ of replevin for the inventory.
 

 Consignor intervened after lender’s re-plevin of the inventory and claimed the painting. The evidence showed that he placed the painting with the gallery after lender’s security interest had been perfected.
 
 [1]
 
 He did not attach any tag or legend to the painting that it was on consignment.
 
 [2]
 
 Nor did he file a UCC-1 financing statement in Florida giving notice of his prior interest in the painting. Following a trial, the court found consignor’s interest superior to lender’s perfected interest, reasoning:
 

 “[lender] had actual knowledge that [gallery] sold antiques and other goods on consignment. Specifically ... [lender] entered into a Profit Participation Agreement with [gallery] which contemplated participation in the profits of the sales of consigned goods. Further ... [lender] had actual knowledge and con
 
 *65
 
 templated the continuing consignment of goods at [gallery], and contemplated participation in the profits from the sale of consigned goods. [Consignor] has shown by clear and convincing evidence that he has a superior right and title to the painting that is the subject of this law suit.”
 

 From the judgment in consignor’s favor, lender appeals.
 

 The Florida Uniform Commercial Code (UCC) governs sales and secured transactions. The UCC specifies that the term “security interest” means “an interest in personal property ... which secures payment or performance of an obligation” and “includes any interest of a consignor....” § 671.201(35), Fla. Stat. (2009). As for consignments, UCC Article 9 further specifies:
 

 “Consignment
 
 means a transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale and:
 

 1. The merchant deals in goods of that kind under a name other than the name of the person making delivery; is not an auctioneer; and is not generally known by its creditors to be substantially engaged in selling the goods of others;
 

 2. With respect to each delivery, the aggregate value of the goods is $1,000 or more at the time of delivery;
 

 3. The goods are not consumer goods immediately before delivery; and
 

 4. The transaction does not create a security interest that secures an obligation.” [internal subheadings omitted]
 

 § 679.1021(l)(t), Fla. Stat. (2009). Again the record indisputably shows that consignor did nothing to perfect a prior interest in the painting by filing a UCC-1, by affixing a tag or by having the gallery post a sign that some inventory is on consignment.
 

 At trial consignor presented evidence that lender’s principal knew some of the gallery’s items were on consignment. The lender’s principal complained that the gallery failed to furnish inventories during the three years before the consignment. When he finally received an inventory, it listed several thousand items for sale but there were not more than 60 at the time. According to some records, consignment goods never exceeded 15% of inventory in the few years preceding the store’s demise.
 

 While lender knew there were some consignment goods for sale, there is absolutely no record evidence as to whether the gallery was “generally known by its creditors to be substantially engaged in selling the goods of others.” § 679.1021(l)(t)lc. Consignor presented no evidence as to who or how many creditors the gallery had when he placed his painting there for sale in 2006. Similarly there is no evidence that lender knew this painting was on consignment or of any agreement between the gallery and consignor. So it is clear this case involves a prior perfected security interest in inventory and a subsequent unperfected security interest in a painting placed with the gallery for sale on consignment.
 

 The law does not support the trial judge’s decision. The Florida UCC explicitly provides that a perfected security interest in goods takes priority over all subsequently perfected and unperfected security interests in the same goods. § 679.322(1), Fla. Stat. (2009). Florida law also explicitly provides that a consign- or’s interest in goods placed for sale with a consignee who routinely sells such goods is merely an unperfected security interest subject to the claims of those with prior perfected security interests.
 
 See
 
 §§ 679.319 and 679.322(l)(b), Fla. Stat.
 
 *66
 
 (2009);
 
 see also In re Corvette Collection of Boston Inc.,
 
 294 B.R. 409, 414 (Bkry.S.D.Fla.2003) (holding that as to consigned goods, presumption is that goods are held by consignee on sale or return basis subject to claims of consignee’s creditors).
 

 The consignor in this case could have defeated the priority of secured creditors only by proving that a majority of the gallery’s creditors knew that it was substantially engaged in consignment sales.
 
 See e.g. Corvette Collection,
 
 294 B.R. at 414. But consignor offered no evidence as to who the gallery’s creditors were or what they knew about his goods for sale. The cases follow a general rule of thumb that consignees are not considered to be “substantially engaged” in selling the goods of others unless they hold at least 20% of inventory on a consignment basis.
 
 See In re Valley Media Inc.,
 
 279 B.R. 105, 125 (Bkry.D.Del.2002);
 
 see also In re Wedlo Holdings Inc.,
 
 248 B.R. 336, 342 (Bkry.N.D.Ill.2000) (holding as a matter of law that consignee who obtained only 15% to 20% of its inventory on consignment was not substantially engaged in selling goods of others).
 

 To satisfy the “generally known” requirement, a consignor must show that a majority of the consignee’s creditors were aware that the consignee was substantially engaged in selling the goods of others by consignment sales, and the majority is determined by the number of creditors, not by the amount of their claims.
 
 See Valley Media,
 
 279 B.R. at 126;
 
 In re Wicaco Mach. Corp.,
 
 49 B.R. 340, 344 (E.D.Pa.1984) (holding that 20% of creditors knowing of consignment relationship does not satisfy general knowledge requirement, notwithstanding that such creditors represented 63% of claims against debtor). Again, here the consignor had no idea who or how many creditors the gallery had. Consignor’s case authorities are inappo-site, for they involve actual knowledge by the lender of a specific consignment.
 

 This case is factually similar to
 
 Valley Media.
 
 There, some of the debtor’s vendors had entered into consignment arrangements with the debtor before the debtor filed for bankruptcy. 279 B.R. 105 at 115. The consigned inventory was commingled with all of the other inventory of the debtor at two warehouse locations. 279 B.R. 105 at 116. No signs were posted at the warehouses, and there were no signs or markings on the consigned inventory indicating that the inventory had been obtained on a consignment basis. 279 B.R. 105 at 116. When the debtor moved the bankruptcy court to sell all of its inventory, the consignment vendors objected, arguing that they owned their consignment inventory by virtue of their consignment arrangements. 279 B.R. 105 at 121-22. The court observed that the consignors could have obtained a prior interest in their consigned goods if they had either (1) filed UCC-1 financing statements identifying their goods as required under UCC Article 9, or (2) proved that the consignee was generally known by its creditors to be substantially engaged in selling the goods of others. 279 B.R. at 123.
 
 See also In re New York Diamond & Jewelry Exch. Inc.,
 
 26 B.R. 32 (Bkry.S.D.Fla.1982) (consignor failed to perfect security interest by filing financing statement and failed to establish that debtor was generally known by its creditors to be substantially engaged in sale of goods of others, had unperfected security interest in diamonds, subject to trustee’s right, and since trustee did not have diamond among assets of estate, trustee was entitled to judgment against plaintiff);
 
 ITT Commercial Fin. Corp. v. Unlimited Auto. Inc.,
 
 166 B.R. 637 (N.D.Ill.1994) (secured creditor of debtor-dealer had priority over consignor of motor vehi
 
 *67
 
 cle, where consignor did not comply with applicable filing requirements of UCC and secured creditor enjoyed status of perfected secured creditor with claim to inventory of debtor).
 

 What this case presents is the common collision between a legal rule and an opposing claim for individualized justice. Ours is supposed to be a rule of law, not of judges. Some rules of law are meant to be categorical and unavoidable. The law requires, for example, citizenship to vote, driving on the right side of the road, recorded title to real property, timely assertion of civil claims — to mention just a few — all of which cannot be avoided by an individual claim for sympathetic understanding. Some legal rules explicitly allow their application to be varied by individual circumstances, using equitable principles, but the commercial law on secured transactions is not among them.
 

 The rules for acquiring and enforcing security interests were not written to permit individualized justice and equity contrary to their requirements. It would not be much of a uniform code, for example, if legal rules on sales rights and remedies transformed themselves from case to case, or negotiable instruments were not predictably and reliably negotiable, or that priorities of security interests were adjustable depending on whose individual circumstance is more sympathetic. The statutes give us no authority to refuse to enforce priorities under UCC Article 9 on the basis that the painting has been in the family for years, or that the lender knew the gallery did some consignment sales, or that this lender’s funding agreement with the gallery allowed it to share to some extent in its profits, or by framing the painting’s sale as a bailment instead of a consignment.
 
 [3]
 

 The law creating the priority rule afforded consignor effective tools to avoid a prior security interest in gallery’s inventory. These tools were simple, not burdensome, and easily satisfied. He needed only to file a UCC-1 under Florida law. Aside from that, he could have required the gallery to affix a tag onto the painting and place a sign alerting prospective buyers of a consignment sale. He did none of these things. Nothing in the record we have been given suggests that lender or gallery did anything to dissuade him from prior consultation with a lawyer to protect his painting by complying with statutes for avoiding prior interests. In the end he failed to offer any evidence that most of gallery’s creditors knew that a substantial part of its sales were consignments.
 

 The judgment of the trial court is in error. The perfected security interest of lender has priority over the claim of consignor.
 

 Reversed.
 

 HAZOURI and MAY, JJ., concur.
 

 [1]
 

 . The painting was by an artist named Cortes. The consignment agreement stated that gallery was free to sell for not less than $42,000.
 

 [2]
 

 . Florida law requires the consignor of works of art to give notice to the public by:
 

 "affixing to such work of art a sign or tag which states that such work of art is being sold subject to a contract of consignment, or such consignee shall post a clear and conspicuous sign in the consignee's place of business giving notice that some works of art are being sold subject to a contract of consignment.”
 

 § 686.502(2), Fla. Stat. (2009).
 

 [3]
 

 .
 
 See
 
 § 679.1021(l)(t), Fla. Stat. (2009)
 
 (consignment
 
 means any transaction — regardless of its form — in which a person delivers goods to a merchant for purpose of sale).